# CASES

IN THE

# HIGH COURT OF CHANCERY.

JEREMIAH DUCKER,
vs.
GEORGE G. BELT.  } SEPTEMBER TERM, 1851.

[CHANCERY PRACTICE.]

THE complainant, the holder of a mortgage from the defendant, dated the 9th of August, 1842, obtained a decree upon his bill filed on the 22d of May, 1847, against the mortgagor alone for a sale of the mortgaged property, and became the purchaser thereof at the sale made on the 7th of August, 1847. The Auditor, by his report of the 4th of December, 1847, applied $4483 85, of the proceeds to complainant's mortgage, $1274 15 to an elder judgment against the defendant, and $480 55 to W's judgment rendered in September, 1845, and the balance of $319 95 to the mortgagor. This report was confirmed on the 26th of July, 1848. On the 10th of September following, K., the holder of a mortgage on the same property, dated the 23d of January, 1843, filed his petition stating the existence of his mortgage and claiming the surplus proceeds after payment of liens prior to his own, and praying that the order ratifying the Auditor's report might be rescinded. The 9th of October was fixed by order of the court for hearing this petition upon notice to the parties interested. E., the assignee of W's judgment, answered this petition, denying knowledge of the mortgage and requiring proof of the allegations thereof. The petitioner was not present on the day fixed for the hearing, no proof had been taken by him, and no excuse offered for his failure so to do. The petition was then dismissed by an order passed on the 10th of October, 1849. Afterwards on the 5th of November, 1849, K. filed a second petition, alleging that he had no notice of the answer of E. to his former petition, and, therefore, did not know what evidence he would be required to produce, and praying that he might be allowed now to produce evidence in support of his claim. HELD—

VOL. III—2

That it was the duty of the petitioner to have been present on the day fixed for the hearing of his first petition to take care of his rights, and having omitted this duty, he has no right now to call upon the court a second time to relieve him ; and that it would be establishing a most loose and inconvenient system of practice to grant his present application, and again open the order confirming the Auditor's report.

The court cannot revoke the order passed on the 26th of July, upon a petition not filed until the 5th of November, because the July term had then expired, and the decree of the 26th of that month must be regarded as enrolled and no longer liable to be heard upon petition.

If a decree be enrolled so that the cause cannot be reheard upon petition, there is no remedy but by a bill of review, which must be upon error appearing upon the face of the decree, or upon some new matter discovered since.

The right of a junior mortgagee to come in upon the surplus proceeds of sale when the mortgaged property has been sold under a decree of this court, to satisfy an elder mortgage, after payment of such elder mortgage is well settled.

On the 31st of January, 1851, after the second petition of K. was dismissed, the complainant in the cause, by whom the property was purchased in 1847, filed a petition, asking that the order of the 26th of July, 1849, confirming the Auditor's report, might be revoked, and the money appropriated to pay K's mortgage, upon the ground, that he, as purchaser, was entitled to have the title disincumbered, and insisting that in his character of purchaser he cannot be regarded as a party to the proceedings, and, therefore, the orders and decrees of the court therein are not binding upon him. HELD—

That this application is not warranted by the decision of the Court of Appeals in the case of *Glenn* vs. *Clapp*, 11 *Gill & Johns.*, 1, and that the petitioner being the complainant, and having had a large proportion of the purchase money applied to the payment of his own claim, he was affected *with notice* of the appropriation of a portion to the payment of W's judgment, and, therefore, cannot escape the consequences of his remissness in suffering upwards of three years to elapse before bringing forward his objection.

The rights of all incumbrancers, or persons having liens existing at the commencement of a suit for a foreclosure and sale, whether subsequent or prior in date to the plaintiff's mortgage, who are not made parties to the suit, cannot be impaired by the decree.

[The facts of the case are fully stated in the opinions, the first of which was delivered on the 14th of February, 1850, as follows :]

THE CHANCELLOR :

On the 4th of December, 1847, the Auditor made his report in this case, distributing the proceeds of sale after the payment of the trustee's commissions and expenses. *First*, To the satisfaction of the mortgage debt due the complainant. *Secondly*,

To the payment of a judgment in favor of Herman H. Perry, against the mortgagor, rendered at January term, 1840, of Baltimore County Court. *Thirdly*, To the payment of a simi- lar judgment in favor of the State of Maryland, use of Samuel Wilson, rendered at September term 1845, leaving a residue of $319 95, which was assigned to the defendant, Belt.

Exceptions were filed to this report, on the 23d of June, 1848, on behalf of G. L. Dulaney and James M. Buchanan, in which among other objections against its ratification, the existence of an intervening mortgage to the trustees of the poor of Baltimore county is urged. This mortgage, the exception states, is elder in date than the judgment in favor of Wilson—is of the property sold under the decree in this cause, and of an amount exceeding the surplus proceeds of sale. The mortgage, however, was not ex- hibited or filed in the cause, nor was anything stated, or shown, by which the interest of the exceptants was manifested. There was not then, nor is there now, any thing in the cause to show that the parties by whom the exceptions were filed had any in- terest whatever, in the fund to be distributed.

In this state of the case the cause was laid before the Chan- cellor during the July term, 1849, and on the 26th of the month, after close of the sittings, an order was passed, ratifying the report of the Auditor, directing the proceeds to be applied accordingly and overruling the exceptions. On the 10th of September fol- lowing, a petition was filed in the cause, by John King, presi- dent of the board of trustees for the poor of Baltimore county, stating the existence of the prior mortgage, to secure the pay- ment of the debt due from the defendant, Belt, to them, and other circumstances which it was supposed gave them a title to have the surplus proceeds of sale appropriated to their pay- ment, and praying that the order of the 26th of July, 1849, ratifying the report of the Auditor, might be rescinded, that the petitioner might be allowed to file his claim under the mort- gage, and that the trustees for the sale of the property might, in the meantime, be prohibited from paying over the money to Wilson, &c.

The court on the same day passed an order fixing the 9th of

the then ensuing month of October for hearing the matter of the petition, directing the trustees to retain the money, and providing that a copy of the petition, and of the order, should be served on them, and Wilson and Hugh W. Evans, to whom the judgment in favor of Wilson had been assigned, on or before the 25th of the same month of September.

On the 24th of that month, Evans filed his answer to that petition, in which he denied all knowledge of the mortgage, and of the debt thereby intended to be secured, and insisted that if there was any such mortgage, it should have been previously exhibited in the cause. This answer also denied, or declared the respondent's entire ignorance of the grounds of equity contained in the petition, and the cause being submitted to the Chancellor, in pursuance to the order of the 10th of September preceding, on the petition and answer without proof on either side, an order was passed on the 10th of October, 1849, rescinding the said order of the 10th of September, and dismissing the petition upon which it was passed.

Afterwards, on the 5th of November, 1849, a second petition was filed by the same party, in which, among other things, he alleges, that he had no notice of the answer filed by Evans to his former petition, or of the contents thereof, and, therefore, did not know what evidence it would be necessary for him to produce in support of his said petition, and praying that he may be permitted to produce evidence of the allegations of his said former petition, and in support of his claim. The petition also states the death of the said George G. Belt, who it appears died on the 8th of May, 1848, and his administrator was made a party.

Upon this petition, which was not verified by the affidavit of the party, an order was passed on the 6th of November, 1849, fixing the 6th of the following December for the hearing thereof. And an answer having been filed thereto by Evans, the case now is presented for consideration, upon all the proceedings in the cause, together with certain affidavits which it is agreed by the parties shall be read as if taken under the order of the court. A written argument has been submitted by the counsel for Mr. Evans, and the petitioner's counsel has been heard.

The right of a junior mortgagee to come in upon the surplus proceeds of sale when the mortgaged property has been sold under a decree of this court, to satisfy an elder mortgage, after the payment of such elder mortgage is believed to be well settled. Such right appears to be recognized by the Court of Appeals in the case of *Lee* vs. *Ad'rs of Boteler & Belt*, 12 *Gill & Johns.*, 323, and as the surplus in such a case represents the equity of redemption of the mortgagor, and is the very security pledged to the second mortgagee, no good reason is seen why he may not come and take it rather than permit it to be handed over by the court to the mortgagor. This, moreover, is the precise application which the purchaser of the property might insist upon, because in case the second mortgagee, is not made a party to the bill his rights could not be bound by the decree, and he might possibly disturb the title of the purchaser by subsequent proceeding.

This is not like the case recently decided in which the petition of a party representing himself to be a junior incumbrancer, praying to be made a party to the bill by a prior mortgagee, was dismissed upon the ground that he had no right thus to interfere. Because here there has been a sale, the claim of the elder mortgagee satisfied, and a surplus remains, being the value of the equity of redemption, upon which the party having a claim to that equity must be entitled to put his hands.

But in this case, a portion of this surplus, was appropriated by the Auditor, as far back as the 4th of December, 1847, to the payment of Wilson's judgment, which Belt, the mortgagor, admitted to be due, and consented should be allowed, according to its priority. This audit was confirmed on the 26th of July, 1849, and the question now is, whether this court can or ought, under the circumstances, to rescind the order of confirmation, and direct the money to be paid to the petitioner. The order of the 10th of September, 1849, passed upon his own application, fixed the 9th of October following for the hearing of his petition. The answer of Evans was put in on the 24th of the same month of September, by which the petitioner was put to the proof of his claim, and of all the grounds upon which he rested

2*

his equity to the interposition of the court. The day of hearing came, but the petitioner was neither prepared with his proofs nor with any excuse for their non-production, and his petition and the answer thereto being submitted by Evans, under and according to the course of the court, the petition was dismissed.

The petitioner now alleges, that he did not know that Evans' answer had been filed, and consequently did not know what proofs would be required of him. But is this a reason why he was not here, on the 9th of October last, the day fixed upon his own petition, for the hearing of the application? If he had been present and stated sufficient grounds, the court would have given him further time to produce his evidence. This, however, he did not do, and offers as an excuse for not being prepared with his proofs, that he did not know that Evans had filed an answer.

It is quite probable that he did not know that Evans had filed an answer. But he certainly did know that the 9th of October, 1849, was the day fixed for the hearing of his own petition, and I conceive it would be establishing a most loose and inconvenient system of practice, to grant the present application, and open a second time the order of the 26th of July last. It was said by the Court of Appeals, in the case of *Gott & Wilson* vs. *Carr*, 6 *Gill & Johns.*, 309, "that a suitor in court is bound to be present in person, or by attorney, to take care of his rights, and attend to their due prosecution, and cannot make the omission to perform this duty the foundation of an injunction." So here it seems to me especially to have been the duty of this petitioner to have been present on the 9th of October last, to take care of his rights, and that having omitted this duty, he has no right now to call upon the court a second time to relieve him, upon the ground that he was ignorant of the proceedings which had been had in the cause after he filed his petition. If he had been present, he would have known what had been done in the cause, and what steps it was necessary for him to take for the protection of his rights.

There are strong equities upon both sides. The petitioner, as the elder incumbrancer, certainly had the first lien on the fund, and Evans, as a surety, is to be favorably considered.

There is, moreover, another very formidable if not insuperable objection to granting the relief prayed by this petition. It prays not only that the order of the 10th of October last may be rescinded, but all other orders passed since the death of Belt, including, of course, the order of the 26th of July last. The object, then, is to get rid of the order of the 26th of July, 1849, ratifying and confirming the report of the Auditor, and directing the proceeds of sale to be applied accordingly. And in truth, unless the petitioner can procure a revocation of that order, his purpose cannot be accomplished. But can this court now revoke that order upon the petition filed on the 5th of November last? The July term had then expired, and the decree of the 26th of that month must be regarded as enrolled, and no longer to be reheard upon petition. *Berch et al.* vs. *Scott,* 1 *Gill & Johns.*, 393. In that case the Court of Appeals say, "if a decree be obtained and enrolled, so that the cause cannot be reheard upon petition, there is no remedy but by a bill of review, which must be upon error appearing upon the face of the decree, or upon some new matter discovered since." It does not appear to me to be a sufficient answer to this objection, to say that the petition of the 10th of September last, was filed before the preceding July term had closed, because that petition was dismissed and finally disposed of by the order of the 10th of the following October. The petition, therefore, filed on the 5th of November, 1849, can derive no aid from that filed on the 10th of the preceding September, and we must deal with the last petition now, irrespective of that which was filed previously, and if this be so, the error, if one was committed, in the passage of the order of the 26th of July last, cannot be corrected by this form of proceeding. It appears by the report of the Auditor in this cause, that after satisfying the several claims filed and allowed, there remained a residue of $319 95, which was assigned to the mortgagor, Belt, and nothing in this opinion, or in the order about to be passed, is to be understood as deciding that the petitioner, King, may not, by a proper proceeding, claim and recover that balance. The opinion and order of the court has reference ex-

clusively to the rights of the petitioner as against Wilson's judgment.

It is, thereupon, ordered, this 14th day of February, 1850, that the petition of John King, filed in this cause on the 5th day of November, 1849, be, and the same is hereby, dismissed, with costs to be taxed by the Register.

[The second opinion was delivered on the 1st of October, 1851, as follows :]

THE CHANCELLOR:

In the opinion of this court delivered on the 14th of February, 1850, the facts of the case are stated down to that period, and it, of course, is unnecessary to recapitulate them.

Upon those facts, the court come to the conclusion that it had no power to open and rescind the order of the 20th of July, 1849, upon the petition of John King, filed on the 5th of November of the same year, the object of .which, was to apply a portion of the money raised by a sale of the property, in the proceedings mentioned, in a different way from the appropriation directed by that order.

The order of February, 1850, stands unreversed, no attempt having been made to bring it before a superior court for examination, and we are now engaged upon a petition filed on the 31st of January, 1851, nearly twelve months afterwards, in substantially re-trying the same question, in the same cause, because it is quite apparent if the present attempt is successful, the object proposed by the former petition will be accomplished.

The petition of November, 1849, was filed by King, the second mortgagee, claiming that the surplus proceeds of sale, after satisfying the elder mortgage, should be applied to the payment of his mortgage, in preference to a junior judgment in favor of the state, use of Samuel Wilson, to which, by the report of the Auditor and the court's order of the 26th of July, 1849, such surplus had been in part applied, and this petition, for the reasons stated in the former opinion, was dismissed.

The present petition was filed on the 31st of January, 1851,

by the elder mortgagee, the party by whom the original bill in the cause was filed, by whom the decree was obtained, and by whom the property was purchased in August, 1847. He asks that the order of the 26th of July, 1849, confirming the report of the Auditor, and directing the application of the purchase money, may be revoked, and the money appropriated to pay the second mortgage, upon the ground that as the purchaser he is entitled to have the title disincumbered.

This application is not warranted by what was said by the Court of Appeals in the case of *Glenn* vs. *Clapp,* 11 *Gill & Johns.,* 1. The object here is not to rescind the sale and have the purchase money restored, upon the ground that the purchaser has been, or is exposed to be, disturbed in his possession by one having clear title to the estate, which title was entirely unknown to the purchaser at the time of the sale. He does not ask in his petition that the sale may be rescinded, nor does he say that the incumbrance which he wishes to have removed was unknown to him when he purchased, nor that his title as purchaser, has been, or is, exposed to be, disturbed by one having a clear title to the estate, nor does he say, nor could he say, that there is, or is likely to be, a total failure of consideration. All that he says is, that "to make his title as a purchaser more secure, he is entitled to have said sum" (meaning the amount applied to the payment of Wilson's judgment) "applied to the lien of King, the second mortgagee."

The case then is simply this: the present petitioner, Jeremiah Ducker, holding a mortgage executed by George Gordon Belt, dated the 9th of August, 1842, filed a bill on the 22nd of May, 1847, against the mortgagor alone, for the sale of the mortgaged premises, to pay his debt. When this bill was filed, there existed a second mortgage, that to King, dated the 23d of January, 1843, duly executed and enrolled, of which Ducker had constructive, if not actual, notice, but he did not in his bill make this second mortgagee a party. He obtained a decree, and at the sale of the property, made on the 7th of August, 1847, he became the purchaser, and the sale was duly ratified and confirmed. The Auditor, by his report, dated and

filed on the 4th of December, 1847, made a distribution of the proceeds of the sale, by which, after appropriating $4483 85 to the payment of the complainant's own mortgage, and $1274 15 to the payment of an elder judgment, he applied $480 55 to Wilson's judgment, leaving a balance of $319 95, which was assigned to the mortgagor. This audit was ratified and confirmed on the 26th of July, 1849, being more than nineteen months afterwards, the purchaser interposing no objection, nor did he, in fact, make any objection until the 31st of January, 1851, more than three years from the filing of the Auditor's report.

The ground now taken is, that this petitioner though he was the complainant in the original bill, and though by the report of the Auditor, and the order of the court thereupon of the 26th of July, 1849, he received a large proportion of the proceeds of the sale of the mortgaged premises, he being himself the purchaser thereof, yet that inasmuch as he cannot, in his capacity *of purchaser*, be regarded as a party to the proceedings, the orders and decrees of the court therein, are not binding upon him. It was said by the late Chancellor in *Binney* vs. *Cose,* 2 *Bland,* 108, that "where the legal capacities of the parties are different, such capacities must be considered as if they were several persons." This may be so, and I have no doubt is so in many cases, in which questions arise as to whether proper parties are before the court. But the question here is not whether this petitioner was a party to the proceedings as a purchaser, but whether being a party, as the complainant, and having had a large proportion of the purchase money applied to the payment of his own claims, he is not affected *with notice* of the appropriation of a portion of the proceeds to the payment of Wilson's judgment. And if he had such notice, I do not see how he can escape the consequences of his remissness in suffering upwards of three years to elapse before he brings forward his objection. He insists that no harm would be done to the holder of Wilson's judgment by this, because he had no legal or equitable claim to any portion of the proceeds of the sales, and that if his application is granted, it will be

only giving the money to those who are entitled to it. But how can we know that no harm will result to Wilson from this negligence. Belt, the mortgagor, is now dead, and it may very well be, if this petitioner had asserted his rights earlier, that the judgment creditor might have recovered his claim in some other way. Besides, this judgment is now held by Evans, the assignee of Wilson, and how is it possible to say to what extent his rights and remedies over against those who may be ulteriorly responsible to him, may be jeoparded by this delay. It is said, and cases have been cited in support of the position, that to a bill for a foreclosure and sale, all incumbrancers, or persons having liens, existing at the commencement of the suit, subsequent as well as prior in date to the plaintiff's mortgage, must be made parties, otherwise they will not be bound by the decree. Such was the judgment of Chancellor Kent, in the case of *Haines* vs. *Beach*, 3 *Johns. Ch. Rep.*, 459, and I presume it can scarcely be questioned, that the rights of such persons, not made parties, cannot be impaired by the decree. But that is not the question involved in this case upon this petition. The mortgagee here thought fit to file his bill without making the junior incumbrancers parties, though as to the mortgage to King, he had constructive notice by the enrollment, and then having obtained a decree, and himself become the purchaser of the property, he claims to have the surplus applied in satisfaction of King's mortgage, which King himself, by his negligence, had forfeited his title to have done. For these reasons, in addition to those stated in the opinion of February, 1840, I am of opinion the relief asked for by this petition cannot be granted.

———

GRAFTON L. DULANEY, for Petitioners.

J. M. CAMPBELL, for Evans and Wilson.